UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIA GODMAN,

        Plaintiff,

vs.                               Case No. 8:08-cv-00333-JDW-TBM

CITY OF LARGO, a Florida municipality,
and JUSTIN MARTENS, Largo police officer,
in his individual capacity,

        Defendants.
_____/

## ORDER

**BEFORE THE COURT** are the parties' cross-motions for summary judgment. Upon consideration, Defendant Justin Martens' Motion for Summary Judgment (Dkt. 40) is GRANTED, Defendant City of Largo's Motion for Summary Judgment (Dkt. 46) is GRANTED, and Plaintiff's Cross-Motions for Summary Judgment (Dkt. 47) are DENIED.

### *Background*

Maria Godman brought this 42 U.S.C. § 1983 action against Justin Martens, a City of Largo Police Officer, alleging that he violated her constitutional right to be free from excessive force during the course of her arrest. Godman alleges that the City of Largo is liable for battery under Florida Statutes § 768.28(9), based on the same incident. Unlike many excessive force cases, the events in this case were captured on video.

On March 24, 2006, the City of Largo Police Department dispatched Officer Martens to

1

conduct a DUI investigation following a traffic accident. (Martens Aff. ¶ 5).[1] Once at the scene, Officer Martens determined that Godman, who had been driving one of the vehicles, was intoxicated. (Martens Aff. ¶¶ 6, 7). Officer Martens placed her under arrest for DUI and leaving the scene of an accident, and he handcuffed her hands behind her back. (Video of arrest; Martens Aff. ¶ 7).

According to Officer Martens, Godman became very uncooperative and began to physically resist. (Martens Aff. ¶ 8). The video supports Officer Martens' averments. The video shows Godman collapsing as the officers led her to the police vehicle after placing her under arrest. Godman and the officers walk out of the view of the video, but in the audio, a struggle between Godman and the officers can be heard, confirming that Godman resisted being placed in the vehicle. One of the officers can be heard warning Godman that he would apply pepper spray if she did not stop fighting them. Godman continued to struggle, and it appears that one of the officers sprayed Godman with pepper spray. After placing Godman in the police car, the officer turned the video camera toward her. Godman can be observed from that point on, until she was removed from the patrol car.

After being placed in the vehicle, Godman becomes very agitated and makes verbal threats, including threatening to kill Officer Martens. (Video of arrest; Martens Aff. ¶ 10). She can be seen kicking the interior of the vehicle and attempting to kick out the windows. (Video of arrest; Martens Aff. ¶ 10).[2] One of the officers reaches in the car and applies pepper spray to her face. (Video of

---

[1] The only evidence before the Court consists of a video of the incident, which the Defendants and Plaintiff submitted separately (Dkts. 23, 51), and identical affidavits of Officer Martens, filed separately by the City of Largo (Dkt. 16-3) and Officer Martens (Dkt. 40, Ex. 1). Plaintiff has not submitted an affidavit and relies solely on the video. The parties agree that the video accurately depicts the events during Godman's arrest and transport to jail.

[2] The audio is unavailable for several minutes, during which the video reveals Godman continuing to kick, scream, and act aggressively.

arrest). Godman calms down somewhat for a brief period, but her demeanor continues to alternate between periods of aggression, which includes screaming, cursing, threatening to kill the officers, and kicking at the seats and windows, and periods of passive whimpering. Godman eventually appears to pass out, go to sleep, or lose consciousness. The officers unsuccessfully attempt to wake her by shaking her shoulder three times. When Godman does not respond, one of the officers places what appears to be smelling salts under her nose. Godman awakens and immediately begins cursing and threatening the officers again.

At some point in his investigation, Officer Martens learns that Godman had previously been arrested for battery on a police officer. (Martens Aff. ¶ 11). Martens and Godman can be heard discussing her prior arrest as she is transported to the jail. (Video of arrest). As she is transported to the jail, Godman continues to curse Officer Martens and can be seen struggling with her restraints. She eventually frees her right hand from the handcuffs, and both hands are visible in front of her, unrestrained. (Martens Aff. ¶ 13; Video of arrest). On noticing that she had escaped the handcuffs, Officer Martens calmly inquires, "What are your hands doing up there? Why are they out of the handcuffs?" Godman responds, "Why? Because they hurt, and I had to rub my eyes." She adds: "Put them back on. I don't give a shit. I just had to wipe my eyes." Officer Martens stops the vehicle and opens the rear passenger door.

In a calm but firm voice, Officer Martens instructs Godman: "Put your hands back there now." When Godman does not immediately comply, Officer Martens attempts to place her left hand behind her back to handcuff her.[3] (Video of arrest; Martens Aff. ¶ 18). Officer Martens does not

---

[3] At this point, Officer Martens is away from the camera. Only his arms can be seen reaching into the car.

appear to use force beyond what was necessary to re-restrain Godman in handcuffs behind her back. As he attempts to move Godman's arm behind her, a crack is audible, immediately after which Godman screams, "You broke my arm! Oh my God, I can't believe you broke my arm!" According to Officer Martens, Godman resisted his attempt to handcuff her, and he applied moderate force, which he contends was the minimum amount of force necessary to put her hand behind her back. (Martens Aff. ¶¶ 18-19). Officer Martens releases Godman's wrist and summons medical attention. (Video of arrest; Martens Aff. ¶¶ 19-20). Although Godman has not submitted evidence of the extent of her injuries, her pleadings allege that her humerus sustained a fracture near the elbow. (Am. Compl. ¶ 25).

Because the Pinellas County jail requires all prisoners to be delivered with their hands secured behind their backs in handcuffs, it was necessary for Officer Martens to reapply the handcuffs before delivering Godman to the jail. (Martens Aff. ¶¶ 15-16). He believed it would be safer to reapply the handcuffs in the backseat of the police car, rather than allowing Godman outside the vehicle unrestrained, because she could attempt to kick or swing her arms at him. (Martens Aff. ¶ 17).

### *Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N.*

*Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. Once the movant demonstrates the absence of a genuine issue of material fact, the nonmoving party cannot rest on the pleadings but must designate specific facts through the use of affidavits, depositions, answers to interrogatories and admissions on file to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24, 106 S. Ct. at 2553.

The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court must view all facts that are genuinely disputed, and draw all inferences that are reasonably supported by the record, in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380, 381 n.8, 127 S. Ct. 1769, 1776 & n.8 (2007). All reasonable doubts about the facts should be resolved in favor of the party opposing summary judgment. *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008). The Court's role, then, is limited to "deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Morrison*, 323 F.3d at 924 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)).

### Discussion

#### A. *Officer Martens' Motion for Summary Judgment*

Godman claims that Officer Martens violated her Fourth Amendment right to be free from excessive force during the course of an arrest.[4] Officer Martens disputes this assertion and argues

---

[4] Plaintiff also alleges that Officer Martens violated her rights under the Fourteenth Amendment. However, excessive force claims arising from events during the course of an arrest are analyzed under the Fourth Amendment and its "reasonableness" standard, not the Fourteenth Amendment. *Garrett v. Athens-Clarke County, Ga.*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 1871 (1989)).

that he is entitled to summary judgment on his defense of qualified immunity. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. ----, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Crenshaw v. Lister*, 556 F.3d 1283, 1289 (11th Cir. 2009) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

"To receive qualified immunity, the officer must first show that he acted within his discretionary authority." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009). There is no dispute that Officer Martens was acting within the scope of his discretionary authority at the time of the arrest. Accordingly, the burden shifts to Godman to show that qualified immunity is not appropriate. *See id.*

The qualified immunity analysis involves a two-part inquiry. First, do the facts establish a violation of a constitutional right? *Pearson*, 555 U.S. at ----, 129 S. Ct. at 815-16. Second, was the right at issue "clearly established" at the time the alleged wrong occurred? *Id.* at ----, 129 S. Ct. at 816. The Court has discretion to address the prongs in any order, and in this case, will analyze the constitutional question first. *See id.* at ----, 129 S. Ct. at 818.

1.   *Excessive Force*

Plaintiff bases her excessive force claim on two grounds: Officer Martens' use of pepper

6

spray and his act of pulling her hand behind her back to handcuff her, which resulted in an arm fracture. In determining whether the force was excessive, the Court evaluates "whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Crenshaw*, 556 F.3d at 1290. In doing so, the Court must consider "the totality of the circumstances" and "not just a small slice of the acts that happened at the tail of the story." *Garrett v. Athens-Clarke County, Ga.*, 378 F.3d 1274, 1280 (11th Cir. 2004). The Court must view the officer's actions from the "'perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight' and 'must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.'" *Beshers v. Harrison*, 495 F.3d 1260, 1266 (11th Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 1872 (1989)). The Court devotes "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872. In addressing these factors, the Court should consider "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (quoting *Lee*, 284 F.3d at 1198).[5]

---

[5] Officer Martens argues there is no evidence that he acted with malice and avers in his affidavit that he was not upset or angry and had no malicious intent. (Martens Aff. ¶ 21). Although there are no facts or evidence that would support an inference of malicious intent in this case, the Supreme Court has held that the inquiry must be an objective one, and the officer's subjective intent cannot be considered. *Graham*, 490 U.S. at 397-99, 109 S. Ct. at 1872-73; *Lee*, 284 F.3d at 1198 n.7 (noting *Graham* removed subjective intent from the analysis); *but see Crenshaw*, 556 F.3d at 1290.

### a. The application of pepper spray

Even viewing the facts in the light most favorable to Godman, the use of pepper spray did not constitute excessive force. The video demonstrates that pepper spray was applied, first, as a direct result of Godman's struggling and resistance to being placed in the police vehicle, which the officer could have reasonably believed was active resistance to arrest, and second, as a result of her repeatedly kicking the interior of the vehicle, including its windows, and refusing to stop, after being instructed to do so. Officer Martens could have reasonably believed that her conduct posed a threat to her safety and the safety of others.

While the use of pepper spray can constitute excessive force, "where the crime is a minor infraction, the arrestee surrenders, is secured and is not acting violently, and there is no threat to the officers or anyone else," its use is reasonable "where the plaintiff is resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital." *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002); *see Benton v. Hopkins*, 190 F. App'x 856, 859 (11th Cir. 2006) (holding use of pepper spray on actively resisting arrestee was not excessive force); *cf. Buckley v. Haddock*, 292 F. App'x 791, 798 (11th Cir. 2008) (holding officer's use of taser to deliver multiple high-voltage electrical shocks to passive, handcuffed arrestee was not excessive force because arrestee refused to comply with reasonable orders and resisted being placed in police car), *cert. denied*, --- U.S. ----, --- S. Ct. ----, 2009 WL 273218 (2009).

The undisputed evidence in this case demonstrates that Godman actively resisted being placed in the police car, displayed physical aggression, threatened Officer Martens, and, although handcuffed, was not compliant and continued to kick the interior and windows of the police car, even after Officer Martens ordered her to stop. *See Garrett*, 378 F.3d at 1280-81 (noting handcuffed

8

arrestee who continued to kick violently was not fully secured and additional restraints were reasonable). As Officer Martens was aware of Godman's prior arrest for battery on a police officer, the use of pepper spray was "a very reasonable alternative to escalating a physical struggle with an arrestee." *Vinyard*, 311 F.3d at 1348. Although Godman's eyes may have temporarily burned from the pepper spray, "as a means of imposing force, pepper spray is generally of limited intrusiveness and is designed to disable a suspect without causing permanent injury." *Id.*[6]

Notwithstanding that the offenses for which Godman had been arrested, DUI and fleeing the scene of an accident, are misdemeanors, when evaluated from the perspective of a reasonable officer on the scene, the application of pepper spray was reasonable and necessary under the circumstances. Accordingly, Officer Martens did not violate Godman's Fourth Amendment rights and is entitled to qualified immunity with respect to the application of pepper spray.

        *b.*      *The attempt to secure Godman's hands behind her back*

The events surrounding Godman's broken arm present a separate question from the use of pepper spray. Officer Martens had arrested Godman, properly restrained her hands behind her back in handcuffs, and placed her in the police car. She continued to exhibit aggressive conduct and was continuously verbally abusive toward Officer Martens, cursing and threatening him. Notwithstanding, Officer Martens remained calm and professional in his tone and words. The turning point occurred, however, when Godman managed to escape the handcuffs during her transport to the Pinellas County jail. When that occurred, Officer Martens was confronted with the

---

[6] These circumstances are distinguishable from those in *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002). There, the Eleventh Circuit denied qualified immunity to an officer who sprayed a fully-secured arrestee with pepper spray. The Eleventh Circuit found that, under the plaintiff's version of the facts, she was fully secured, gave no active resistance to the initial arrest, did not attempt to flee at any time, and posed no threat to the officer, herself, or others. *Vinyard*, 311 F.3d at 1347-48.

unexpected. His arrestee, who had a history of violence toward law enforcement, and who had physically resisted arrest, exhibited physical aggression, and had threatened to kill him, was no longer secured. She was about to be delivered to a jail facility and the circumstances posed a risk of harm to her and others. As a result of her conduct, Officer Martens was forced to make a "split-second judgment" about the amount of force that was necessary in circumstances that were "tense, uncertain, and rapidly evolving." *See Graham*, 490 U.S. at 397, 109 S. Ct. at 1872.

Even though Godman informed Officer Martens that she did not oppose having the handcuffs reapplied ("Put them back on. I don't give a shit. I just had to wipe my eyes."), she did not immediately comply with his instruction to place her hands behind her back. Further, under the circumstances, Officer Martens was not required to believe her. *See Rodriguez v. Farrell*, 294 F.3d 1276, 1278 (11th Cir. 2002) ("[A] police officer need not credit everything a suspect tells him. This idea is especially true when the officer is in the process of handcuffing a suspect.") (internal citation omitted). Under the totality of the circumstances, it was reasonable for Officer Martens to believe that upon removing her from the vehicle, she could pose a threat to herself, to him, or to others. Although the video arguably supports an inference that Godman did not physically resist Officer Martens' attempt to handcuff her,[7] she clearly did not immediately comply with his directive to put her hands behind her back. Officer Martens could have reasonably believed that she would become violent or aggressive again and that a reasonable degree of force was necessary to successfully reapply her handcuffs. *See Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) (officer could reasonably believe that force was necessary to secure passive arrestee who had previously resisted

---

[7] Officer Martens disputes this and avers that Godman resisted his attempt to handcuff her. (Martens Aff. ¶ 18). On Officer Martens' motion for summary judgment, Godman is entitled to the inference that she did not physically resist.

10

arrest).

It is well established that "some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment." *Saucier v. Katz*, 533 U.S. 194, 209, 121 S. Ct. 2151, 2160 (2001), *abrogated on another ground by Pearson*, 555 U.S. at ----, 129 S. Ct. at 818. The relevant question here is whether, under the totality of the circumstances, the force used was disproportionate to the need. It was not.

In *Smith v. Mattox*, the Eleventh Circuit addressed an excessive force action brought by an aggressive and resisting arrestee who subsequently became compliant. Smith initially raised a baseball bat and threatened Officer Mattox. However, once the officer drew his gun, Smith turned and ran. *Smith*, 127 F.3d at 1418. After a chase, Officer Mattox again encountered Smith, who pretended to flee a second time, but on the officer's command to "get down," knelt on the ground and docilely submitted to arrest. *Id.* Officer Mattox placed his knee on Smith's back and, to apply his handcuffs, pulled Smith's hand behind his back in a manner that caused Smith to complain of discomfort. *Id.* Smith then heard Officer Mattox grunt before delivering a blow that broke Smith's arm in multiple places. *Id.* The Eleventh Circuit held the officer's use of force was unconstitutional because, "[t]he grunt and the blow that Smith asserts that he heard and felt while Mattox was on Smith's back, coupled with the severity of Smith's injury, push this case over the line." *Id.* at 1419.

The video in this case demonstrates that after escaping the handcuffs, Godman did not immediately comply with Officer Martens' instruction to place her hands behind her back. Even construing the video in the light most favorable to the Plaintiff, the undisputed evidence does not

show, as in *Smith v. Mattox*, that Martens' conduct "crossed the line." There was no "blow," as in *Smith v. Mattox*, and no evidence similar to "the considerable effort and force inferable from the grunt." Rather, Officer Martens merely attempted to place Godman's left hand behind her back for the purpose of re-securing her in handcuffs.

The video demonstrates that Martens used less force in attempting to re-handcuff Godman than the officer in *Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002). In *Rodriguez*, the officer "grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that Farrell was hurting him," which, due to a prior injury, ultimately led to the amputation of the plaintiff's arm. *Rodriguez*, 280 F.3d at 1351. Nonetheless, because the officer only rendered force for the purpose of securing Rodriguez in handcuffs in "a relatively common and ordinarily accepted non-excessive way to detain an arrestee," the officer's actions did not amount to an excessive use of force. *Id.* (noting handcuffing Rodriguez may have amounted to excessive force if the officer knew of the injury or that handcuffing him could aggravate the condition).

In this case, there is no dispute that the Pinellas County jail requires arrestees to be delivered with their hands handcuffed behind their backs. Additionally, precedent in this Circuit recognizes that securing an arrestee's hands behind her back in handcuffs is a reasonable and non-excessive means of restraint. *See id.* There is no evidence that Godman had a prior injury of which Officer Martens was aware, and, like *Rodriguez*, the only force Officer Martens applied was in an attempt to properly secure Godman. That Godman had earlier been able to remove her hand from the handcuffs further supports the use of a sufficient degree of force to re-secure her.

Godman's fractured arm, while by no means a minor injury, does not preclude qualified

immunity. *See, e.g., Scott*, 550 U.S. at 375, 386, 127 S. Ct. at 1773, 1779 (qualified immunity appropriate even though force rendered plaintiff a quadriplegic); *Lewis*, 561 F.3d at 1290, 1292 (affirming summary judgment on qualified immunity defense even though arrestee died after being "hogtied"); *Crenshaw*, 556 F.3d at 1286, 1293 (qualified immunity appropriate even though plaintiff received 31 bites from police dog); *Garrett*, 378 F.3d at 1278, 1281 (officers entitled to qualified immunity where arrestee died after officers fettered his hands and feet less than 12 inches apart); *Rodriguez*, 280 F.3d at 1351-53 (officer entitled to summary judgment on qualified immunity defense despite force that ultimately resulted in amputation of plaintiff's arm).

Notwithstanding the fractured arm and the misdemeanors for which she was arrested, this is not a close case. Officer Martens was faced with an arrestee who had escaped her handcuffs, had previously displayed aggression, and had a history of battery on a police officer. Viewed in the light most favorable to the Plaintiff, the undisputed facts lead to the conclusion that Officer Martens' use of force in attempting to re-secure Godman's hands behind her back was objectively reasonable. Although the attempt to properly restrain Godman resulted in an unfortunate injury, it did not violate her constitutional right to be free from excessive force during the course of an arrest. Qualified immunity insulates Officer Martens from civil liability for the alleged constitutional violation and the broken arm Godman suffered during his attempt to re-handcuff her.

2. *Clearly established right*

Godman has likewise failed to carry her burden to show that the right at issue was clearly established at the time of the incident. "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law

13

that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1291-92 (internal citations omitted). The only courts relevant to the determination of clearly established law are the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Florida Supreme Court. *See Jenkins v. Talledega Bd. of Educ.*, 115 F.3d 821, 827 n.4 (11th Cir.1997) (en banc).

At the time of the incident, *Rodriguez v. Farrell* provided authority that an officer is permitted to grab an arrestee's arm, twist it around his back, and jerk it high to the shoulder in order to apply handcuffs. *Rodriguez*, 280 F.3d at 1351. The fact that it may result in severe injury does not make the application of handcuffs unlawful. *See id.* As long as the arrestee does not have a prior injury of which the officer is aware, the use of this handcuffing technique is an "ordinarily accepted non-excessive way to detain an arrestee." *See id.* As discussed, the force Martens used was substantially less than that used by the officer in *Rodriquez*.

None of the cases Godman cites contain "indistinguishable facts clearly establishing the constitutional right" to be free from this alleged use of force. As discussed, the facts in *Smith v. Mattox* are distinguishable. Unlike the plaintiff in *Smith v. Mattox*, who was fully compliant and had submitted to arrest, Godman had escaped from the handcuffs and did not immediately comply with Officer Martens' instruction to place her hands behind her back. In contrast to *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006), Godman was not restrained, was not compliant, and there is no evidence that Officer Martens focused on a prior injury in order to inflict further pain.

However, there need not be a case "on all fours" with the challenged conduct, if there is a broad principle of law that applies with "obvious clarity." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1277 (11th Cir. 2004); *Vinyard*, 311 F.3d at 1351. The pertinent question is whether

14

the controlling law at the time of the incident gave the defendant fair and clear warning that the alleged conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002); *Vinyard*, 311 F.3d at 1350.

*Lee v. Ferraro* and *Vinyard v. Wilson* suggest a broad principle that "[o]nce an arrestee has been fully secured, such force is wholly unnecessary to any legitimate law enforcement purpose." *Lee*, 284 F.3d at 1199; *see Vinyard*, 311 F.3d at 1348-49, 1355. That principle does not apply with "obvious clarity" to this case, however, because at the time her arm was fractured, Godman had escaped the handcuffs, was not completely secured, and posed a risk of flight or danger to herself and others. Nor does it apply to the use of pepper spray, because the undisputed evidence shows that she actively resisted being placed in the police car and continued to remain physically aggressive, after being instructed to stop by the officers.

Even without particularized case law or an applicable broad principle of law, a right may be clearly established where the "official's conduct was so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without case law on point." *Lewis*, 561 F.3d at 1292. "This standard is met when every reasonable officer would conclude that the excessive force used was plainly unlawful." *Id.* Under the "uncertain and rapidly evolving" circumstances involving a previously aggressive arrestee who had escaped handcuffs and had a prior record of battery on a law enforcement officer, Officer Martens' attempt to re-secure Godman was "not so violent and harsh to be considered an egregious violation of a constitutional right." *See id.* Godman has not satisfied her burden to show that the alleged constitutional right was clearly established at the time of the incident. Accordingly, Officer Martens is entitled to qualified immunity.

## B. The City of Largo's Motion for Summary Judgment

Godman alleges Officer Martens' use of excessive force constituted a battery for which the City of Largo is liable. The City of Largo disputes that the force was excessive and argues that Godman has not established that Officer Martens had the necessary intent to commit a battery.

A defendant may be liable for battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." *City of Miami v. Sanders,* 672 So. 2d 46, 47 (Fla. 3d DCA 1996) (quoting Restatement (Second) of Torts § 18). The required intent "is not necessarily a hostile intent, or a desire to do harm." *Spivey v. Battaglia,* 258 So. 2d 815, 816-17 (Fla. 1972). "Where a reasonable man would believe that a particular result was substantially certain to follow, he will be held in the eyes of the law as though he had intended it. . . . However, the knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent." *Id.* It is not enough that the act itself was intentionally done. The defendant must intend the harm or be substantially certain the harm will occur. *Deane v. Johnston*, 104 So. 2d 3, 8 (Fla. 1958); *see Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S. Ct. 974, 977 (1998) ("Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'").

Even considered in the light most favorable to the Plaintiff, there is no evidence that Officer Martens intended commit an unlawful battery. Officer Martens avers in his affidavit that he did not apply force to Godman with a malicious intent, that there was no indication she could be injured by his actions, and that her injury was completely unexpected. The video does not contradict Officer Martens' affidavit or even support the inference that Officer Martens intended to harm Godman by

pulling her hand behind her back to apply the handcuffs. Although Godman cites the Amended Complaint, her unsworn allegations are not evidence and cannot be relied upon at the summary judgment stage. *See Celotex,* 477 U.S. at 324, 106 S. Ct. at 2553. Further, there is no evidence that Officer Martens believed that harm was substantially certain to follow as a result of his conduct, and no reasonable person would have believed that Godman's arm was likely to break by being pulled behind her back to be handcuffed, as it had been earlier in the evening.

"[P]olice officers are entitled to a presumption of good faith in regard to the use of force applied during a lawful arrest, and officers are only liable for damage where the force used is 'clearly excessive.'" *Davis*, 451 F.3d at 768 (quoting *Sanders*, 672 So. 2d at 47). "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Sanders*, 672 So. 2d at 47, *quoted in Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 911 (11th Cir. 2006). Based on the undisputed facts, the amount of force Officer Martens applied was necessary and therefore reasonable under the circumstances. It was not "clearly excessive" and therefore could not constitute an unlawful battery.

C.  *Maria Godman's Motions for Summary Judgment*

For the reasons discussed above, Godman is not entitled to summary judgment on her claim of excessive force against Officer Martens or her claim for battery against the City of Largo.

*Conclusion*

Accordingly, it is **ORDERED AND ADJUDGED** as follows: Defendant Justin Martens' Motion for Summary Judgment (Dkt. 40) is **GRANTED**, Defendant City of Largo's Motion for Summary Judgment (Dkt. 46) is **GRANTED**, and Plaintiff's Cross-Motions for Summary Judgment (Dkt. 47) are **DENIED**. The Clerk of the Court is directed to enter judgment in favor of the

Defendants and to close this case. All pending motions are denied as moot.

**DONE AND ORDERED** in chambers this 9th day of June, 2009.

/s/ Whittemore
JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record